### STANDARD ACCIDENT INS. CO. v. THOMPSON.

### No. 11083.

Court of Civil Appeals of Texas. Galveston.

Dec. 5, 1940.

Rehearing Denied Jan. 9, 1941.

Kemper, Hicks & Cramer, of Houston, for appellant.

Andrews, Kelley, Kurth & Campbell and F. L. Andrews, all of Houston, for appellee.

CODY, Justice.

Appellee, operating the property of International-Great Northern Railroad Company, brought suit against appellant in part upon its policy of insurance No. MC-22907, as amended by an endorsement number 37,868, and in part upon an agreement hereinafter referred to. Among other things, appellee alleged that while the policy (as amended) was in effect, he and the Highway Department of Texas were engaged in enlarging an underpass under the I.-G.N.R.R.Co. tracks near Pearsall, Texas, where Texas Highway No. 2 (U. S. Highway No. 81) crosses the I.-G.N.R.R. main line, and that the work which was being done on said underpass made it necessary to construct and maintain a temporary crossing for those using said highway. That on February 6, 1937, one H. D. Talley, while driving his automobile along said highway, struck, or was struck by, one of appellee's regular passenger trains. That appellee duly reported the accident to appellant, and it was by them agreed that the claims of the heirs of the deceased should be settled, and a settlement with them for the sum of $2,500 was made by appellee with the approval and consent of appellant. That it was agreed that the settlement should be without prejudice to the rights of appellee, and if the terms of the policy covered the liability of appellee to the deceased and his heirs, defendant (appellant) would reimburse the $2,500. Appellee then alleged that the accident was within the terms of the policy, as amended by the endorsement referred to, an "accident caused by or in any way arising from, out of, or by reason of any work * * * being done in connection with the construction of said underpass". Appellee then alleges, "And in this connection plaintiff would show to the court that the construction of the temporary crossing for State Highway No. 2 and its use by the public generally and H. D. Talley in particular was necessitated by the construction work in enlarging said underpass, and that had it not been for such

construction work the accident here in question could never have happened, because said H. D. Talley, in crossing plaintiff's railroad tracks, would have used the underpass already there, and could not possibly have been struck by any of the plaintiff's trains."

It thus appears from appellee's pleadings that this suit is brought by him on the theory that it was agreed by appellee and appellant that it was for their mutual benefit to settle the death injury for $2,500, and then litigate between themselves whether the policy covered appellee's liability, i. e., the liability which it was agreed was one which, for the best interest of both appellee and appellant, should be settled.

Appellant's answer was confined to a general demurrer and general denial.

At the conclusion of the evidence the court denied appellant's but granted appellee's motion for an instructed verdict, and rendered judgment for him for the recovery of the amount paid in settlement of his liability to Mr. Talley's heirs. The sole question, therefore, is whether, under the pleadings and evidence, the court erred in instructing the verdict for appellee.

Endorsement No. 37,868, which appellee pled amended the policy which he sued on, and which was affixed to the policy, in so far as material, provides:

"Now, therefore, anything in this policy, endorsements, declarations, and statements to which this endorsement is attached to the contrary notwithstanding, it is expressly understood and agreed that in addition to all other obligations imposed upon it by said policy, the Company hereby agrees to insure said assured against loss from liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons, including all employees of assured, caused by or in any way arising from, out of or by reason of any work whatsoever being done in connection with or incident to the construction of said underpasses, overpasses, approaches and other work in connection therewith and incident thereto and/or by reason of the ownership of, occupancy, use, operation or control by the assured of the premises and property to be described and referred to, or any part thereof, provided, however, this policy shall not insure assured against loss from liability imposed by law upon assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered by any employee of assured while actually engaged ·within the scope of his employment by the assured in the performance of work arising out of, incident to or in connection with the construction of said underpasses, overpasses, approaches thereto and other work hereinbefore set out and referred to."

It is clear to us, and we are constrained to hold that the parties made the provisions of endorsement No. 37,868, controlling. It is appellant's contention that there are other provisions in the policy of insurance which make it clear that the policy was not intended to cover a railroad crossing collision caused, not by a work train used in connection with work being done on the underpass, but by a regular passenger train. But the language of the endorsement, if broad enough to include, by reasonable construction, liability for the accident here involved, is necessarily broad enough to exclude any contrary provisions, relied on by appellant as limiting such liability. And a familiar rule requires the construction which is more favorable to the insured. Panhandle Steel Products Co. v. Fidelity Union Casualty Co., Tex.Civ.App., 23 S.W.2d 799. By its endorsement No. 37,868, the insurance company agrees to insure the operator of the railroad properties against loss from liability imposed by law upon the insured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered or claimed to have been suffered by any person which was ·"caused by or in any way arising from, out of or by reason of any work whatsoever being done in connection with or incident to the construction of said underpasses, overpasses and other work in connection therewith and incident thereto. * * *" The quoted language is broad, and we are not authorized to place limitations where the parties themselves did not see fit to place any. That the insurance company intended to assume a liability over and beyond the liability of appellee for damages proximately caused by doing work on the underpass is manifested by the absence of any such limitation. And indeed the only limitation which can be imposed by a court in the construction of this language, is that the construction placed on said terms must be a reasonable one, having in mind the situation with which the parties were dealing. It is a matter of common

knowledge that there is an ever present danger of collision where highways and railroads cross at the same level. It is in anticipation of, for the purpose of obviating, this danger that overpasses and underpasses are constructed. It was therefore entirely reasonable for appellee, as the operator of a railroad, during the period that it was necessary to divert traffic which passed over Highway No. 2 from passing through the underpass so as to make it cross the railroad in the very pathway of trains, to insure against losses which the underpass, when open, obviated. In Dorsey v. Fidelity Union Casualty Co., Tex. Civ.App., 52 S.W.2d 775, 776, writ dismissed, this language was used: "It is well known that certain dangers are peculiar to the doing of certain acts. The doing of certain things or the performance of certain services naturally exposes the one performing such acts to the danger of being injured by third parties as an incident thereto; and, if one is so injured while performing such service, and if it can be said that the danger of being so injured while performing such act is so closely connected with the doing of the act that it could reasonably have been anticipated as one of the dangers incident to the doing of the act, then the injury is one of its consequences, and is a result thereof." During the period that the work on the underpass necessitated that the traffic passing over Highway No. 2 stop passing under the railroad and cross at the same level of the railroad, appellee, was, because of such work, naturally exposed to the danger of collisions, as an incident of operating the railroad which the underpass was designed to obviate, and thus subjected to damage suits. It was as reasonable therefore for the parties to anticipate that during the time the work stopped the use of the underpass that crossing accidents might occur, as it was to suppose that there was any need to maintain such underpass after it had been repaired and enlarged. As the terms of the endorsement are broad enough literally to insure appellee against the liability here involved, and the construction to that effect is a reasonable one, we are constrained to hold that the endorsement insured against this type of accident. The following cases amply support this conclusion. Panhandle Steel Products Co. v. Fidelity Union Casualty Co., Tex.Civ.App., 23 S.W.2d 799, cited supra; Owens v. Ocean Accident & Guaranty Corp., 194 Ark. 817, 109 S.W.2d 928; Merchants Co. v. Hartford Accident & Indemnity Co., 187 Miss. 301, 188 So. 571, 192 So. 566.

Appellant insists that, as it only insured "against loss from liability imposed by law upon the insured for damages on account of injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered * * *", it was necessary, in order for appellee to recover against it, to allege and prove that the $2,500 paid to compromise the claim of the Talley heirs was a loss to appellee from liability imposed by law upon the insured. What would have been necessary for appellee to plead and prove, had he brought this suit exclusively on the policy and endorsement is not pertinent because he brought it, in part, on the agreement which he alleged, as hereinabove set forth. And in connection with the alleged agreement, the following facts were proved without dispute:

That within a few days after the accident, appellee gave appellant formal notice under the policy of such accident and of the expectation that a claim would be presented against insured covering Mr. Talley's death. A few days later, being on February 15, 1937, appellant was furnished with a preliminary report of appellee's claim agent regarding the accident, and suggesting that the claim of the Talley heirs be disposed of without litigation, if possible. On February 27th, 1937, appellant was given additional information of the accident, and appellee again suggested that the claim was a dangerous one that should be settled. Appellee's claim agent again on March 15, 1937, wrote urging settlement of the claim without permitting it to go to suit. On March 17, 1937, appellant's general counsel wrote to appellee's General Claim Agent, in part, as follows:

"* * * It was the agreement that investigations and negotiations for settlement were to be conducted by your claim department; that up to a certain amount you were to exercise your judgment about settling claims and that after settlement had been effected this company was to be billed for the amount paid and for your services in accordance with whatever your methods of bookkeeping were. Owing to the absence of one of our vice-presidents who has immediate charge of the underwriting in connection with this enterprise, I am unable to get his decision upon the question of coverage. This question was considered at our

claim conference on February 23, 1937, and it was the decision of that conference that the case is not covered.

"I will examine the policy and would like to have an opportunity to discuss the question with the vice-president referred to. * * * In the meantime, it seems to me that the obvious thing to do for your protection whether this case is covered or not would be to settle the claim and then thrash out the question of re-imbursement to your company later on. Of course, if your view, looking at it solely from your standpoint without reference to the question of insurance, is to allow the matter to go to suit, then you will probably not want to settle; but, if a settlement can be effected for an amount which would be attractive to you if you had no insurance at all, it would seem to me that you would not lose by making a settlement even though this matter were not covered."

Then, on March 22, 1937, appellee's claim agent wrote appellant's counsel: "It is the opinion of our legal department that this is not a case of clear liability, but it would be more advantageous to endeavor to effect settlement for some amount around $2500 or $3000 for the purpose of avoiding litigation, and I desire to ask if your company will be agreeable to advancing one-half of this amount, the other half to be advanced by the trustee of this railroad, and final responsibility to be decided later by arbitration, if necessary."

Appellant replied on March 30, 1937, to the foregoing proposition: "I am authorized to say that if the case can be settled for some amount not in excess of $2,500.00 we will contribute unconditionally one-half of such amount."

Shortly afterwards, the claim was settled for the sum of $2,500, and a release executed by the Talley heirs, and appellant was billed for one-half. But the General Claim Agent wrote appellant's counsel that the action billing appellant for half of the settlement was not authorized, but was done by a subordinate, and he demanded payment of the entire sum of $2,500, and to this letter, appellant replied:

"In connection with this claim our Mr. Hayden (General Counsel) made an offer to your company in compromise up to $1250.-00, a fifty per cent contribution to be fifty per cent with your company. There is a question in our opinion whether this loss is covered by our policy. We personally do not think it is, but you think it is. The fifty per cent contribution made by Mr. Hayden had been accepted by your company. There is an offer, therefore, and an acceptance. We frankly are not so keen about that proposition. Are we to construe your letter of July 24 as the rejection of that offer and acceptance? If we can so construe it, we are perfectly willing to call the whole thing off and discuss the question of coverage."

In addition to this letter from appellant, and the other letters above referred to, appellee offered other evidence showing that the only dispute between the parties was whether the particular kind of loss here involved was covered by the policy. Both parties knew perfectly well that there was no case of clear liability on the part of appellee for causing the death of Mr. Talley, and that a case of clear liability could not have been settled for $2,500, and that the settlement was made to avoid litigation where a jury might find that, different from the view of the parties, the death was the proximate result of the negligence of the appellee's servants, and the settlement was made for the benefit of whomsoever should be finally found to be liable; for the benefit of the trustee of the railroad, if the accident was not of the character insured against, and for the benefit of the insurance company if the accident was covered. Appellant introduced evidence which, if admissible, tended to establish its theory that this character of accident—resulting from the operation of a regular passenger train—was not intended to be covered by the policy. But there is no evidence, as we view the record, which disputes the evidence to the effect that it was agreed by the parties that the claim should be settled for $2,500, and then that the liability as between insured and insurer should be determined under the policy just as though liability therefor had been imposed by law on appellee. The only difficulty which we have in passing on the question of whether appellee proved up the agreement which he pled, is to determine whether he establishd such agreement merely by the great preponderance of the evidence, or established it as a matter of law. And we have concluded that the trial court was correct in appraising the evidence as having established such agreement as a matter of law.

Of course, if the pled agreement is proved, then the contention of appellant that appellee must plead and prove that he was guilty of negligence for which the

Talley heirs sought damages, is without merit.

Also, had appellee brought this suit on the policy and endorsement alone, appellee would have been compelled to plead and prove that Mr. Talley did not come within the exception; that is, that he was not an employee of the railroad company, engaged in the course of his employment when injured. But the agreement of settlement together with the proof made thereof superceded this requirement. And the sole question was whether said pled-agreement was made.

The facts of this case distinguish it from Green Bus Lines, Inc. v. Ocean Accident & Guaranty Corp., Ltd., 282 N.Y. 104, 25 N.E.2d 865. In that case a general demurrer was sustained to the plaintiff's petition because there was no allegation to the effect that plaintiff, the insured, was under legal liability to pay the damages; but neither was there any allegation of an agreement entered into between the insurer and the insured, after the claim against the insured arose, which superseded the provision that the insured must be legally obliged to pay said claim, and under which alleged agreement the insured paid said claim, saving his rights against the insurer to recover the sum thus paid, if the loss was one of the kind insured against by the terms of the policy sued on.

The judgment of the trial court ought to be affirmed. It is accordingly so ordered.

Affirmed.