## CLAPPER v. AETNA LIFE INS. CO.
### No. 9219.

United States Court of Appeals
District of Columbia.

Argued May 31, 1946.

Decided July 22, 1946.

Mr. Edgar J. Goodrich, of Washington, D. C., with whom Messrs. Donald R. Richberg, Philip W. Amram and Ward M. French, all of Washington, D. C., were on the brief, for appellant.

Messrs. Charles W. Arth and John H. Burnett, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTYMAN, Associate Justices.

GRONER, C. J.

This is an appeal from an order of the District Court granting appellee's motion for summary judgment. The action was brought by appellant, Olive Ewing Clapper, the widow and beneficiary of Raymond L. Clapper, against Aetna Life Insurance Company, on a policy of life insurance issued to appellant's husband in the amount of $5,000.

The policy, written in 1928, contained a provision for a further payment of $5,000 in the event the insured's death resulted from an accident. The complaint charged that while the policy was in full force and effect, insured, being neither in the military or naval service, lost his life while an invited guest-passenger in a United States Naval aircraft flying in the vicinity of the Marshall Islands. The accident resulted from a mid-air collision with another aircraft and the plane in which the insured was a passenger fell into the sea, burst into flames and sank. Insured's body was never recovered. The Insurance Company paid the face amount of the policy, but denied further liability. Thereafter appellant brought this action to recover the additional $5,000 payable in the event of insured's accidental death.

The motion of the defendant Insurance Company for summary judgment urged that it was exempted from liability for the accidental death of the insured, since the policy provided:

"If the death of the insured occurs * * * from bodily injuries effected solely through external, violent and accidental means * * * [and] not * * * from *an aeronautic flight* or submarine descent, * * * the Company will pay, * * *." (Italics supplied)

Appellant contends that the clause "from an aeronautic flight" does not in the facts of this case exempt appellee from liability, since, as counsel insist, it is a term of art,

implying an occupational or experimental position with regard to the particular flight and does not relate to or embrace a passenger on board a plane.

Appellee, to the contrary, contends that the clause covers any and all flight or travel in an airplane, regardless of the insured's position as a passenger or as a member of a plane's crew. Thus the single question for decision is whether insured met his death as a result of "an aeronautic flight."

Counsel for appellee concede that if the language of the clause were "participating in or engaged in an aeronautic flight," the Insurance Company would be liable. Likewise, they concede that all ambiguities, doubts and uncertainties, if any, as to the meaning of the policy must be resolved in favor of the insured. They insist, however, that the provision in the policy excluding liability if death results from "an aeronautic flight" is not ambiguous, but is "so plain that he who runs may read," and can mean but one thing—i. e., an absence of liability, irrespective of the role the insured played when he occupied space in the plane on its fatal trip—in short, that it excludes any claim arising as the result of death in consequence of an airplane flight.

We are unable to agree with this contention. It is quite true that no case is cited and we have found none in which the liability exclusion-clause is in precisely the same words as in the present case, but cases, state and federal, construing language more or less similar may be cited in large numbers. In such cases the holding was that the clause "participating or participation in aeronautics," or "engaged in aeronautic operations, activity or expeditions," does not cover the case of a person who had no

other relation to the flight than as an ordinary passenger.[1]

Here the language of the policy is, as we have pointed out, somewhat different, and as it is written it relieves the insurer of liability in consequence of death resulting from—an aeronautic flight. If the words used had been "resulting from—a flight,"—the case would be simple, for it is obvious that the death of Mr. Clapper was in consequence of—a flight. The actual language, however, is "an aeronautic flight," and the inclusion of the word "aeronautic" when considered in the light of its accepted meaning involves a different problem. We think undoubtedly the parties intended to use the phrase in the sense generally recognized in air travel. Webster's New International Dictionary defines the word aeronautics as "The science that treats of the operation of aircraft," and the word aeronautic as "Pertaining to aeronautics or aeronauts." Certainly, as appellee concedes, insured on the occasion of his death was not "participating" in aeronautics. Moreover, if the flight to be within the exemption of the policy must be one pertaining to the science of operating aircraft, it follows that a mere passenger in an airplane is outside its provisions. For, as was said by the Eighth Circuit, "A mere passenger has no part in the art of the aeronaut and does not study, apply, or advance the science of aerial navigation."[2] Accordingly, it would be going too far to say that as to the insured the particular flight in question was an "aeronautic flight." But even if this interpretation is subject to challenge, the same result would follow, since at best the phrase is so ambiguous as to compel a decision in favor of the insured.[3]

[1] See: King v. Equitable Life Assur. Soc., 232 Iowa 541, 5 N.W.2d 845, 155 A.L.R. 1026–1056; Gregory v. Mutual Life Ins. Co., 8 Cir., 78 F.2d 522, certiorari denied 296 U.S. 635, 56 S.Ct. 157, 80 L.Ed. 451; Mutual Ben. Health & Accident Ass'n v. Moyer, 9 Cir., 94 F.2d 906, certiorari denied 304 U.S. 581, 58 S.Ct. 1054, 82 L.Ed. 1543; Mutual Ben. Health & Accident Ass'n v. Bowman, 8 Cir., 99 F.2d 856, certiorari denied 306 U.S. 637, 59 S.Ct. 485, 83 L.Ed. 1038; Massachusetts Protective Ass'n v. Bayersdorfer, 6 Cir., 105 F.2d 595; Kansas City Life Ins. Co. v. Wells, 8 Cir., 133 F.2d 224; Marks v. Mutual Life Ins. Co. of New York, 9 Cir., 96 F.2d 267; Mayer v. New York Life Ins. Co., 6 Cir., 74 F.2d 118, 99 A.L.R. 155; Gits v. New York Life Ins. Co., 7 Cir., 32 F.2d 7, certiorari denied 280 U.S. 564, 50 S.Ct. 24, 74 L.Ed. 618.

[2] Mutual Ben. Health & Accident Ass'n v. Bowman, 8 Cir., 99 F.2d 856, 859, certiorari denied 306 U.S. 637, 59 S.Ct. 485, 83 L.Ed. 1038.

[3] Cf.: Aschenbrenner v. United States

To say more than this would tend perhaps to uncertainty rather than to clarity. If the Insurance Company had meant what it now says it meant, the opportunity was at hand when the policy was issued to express its position in plain words. If, for example, it intended to exclude *any* death resulting from an airplane flight, words of plain import could have been found so that no question could be raised. In the deliberate use of a word or phrase having a well recognized technical meaning, it is a fair conclusion that the insurer meant that something more must be shown than the mere use, as a passenger, of the facilities of an airplane.

Reversed.

---

Fidelity & Guaranty Co., 292 U.S. 80, 84, 85, 54 S.Ct. 590, 592, 78 L.Ed. 1137: "The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policy holder who is often without technical training, and who rarely accepts it with a lawyer at his elbow. So if its language is reasonably open to two constructions, that more favorable to the insured will be adopted."