**PHŒNIX MUT. LIFE INS. CO. OF HART-FORD, CONN. v. FLYNN.**

No. 9736.

United States Court of Appeals District of Columbia Circuit.

Argued May 12, 1948.

Decided Sept. 27, 1948.

Mr. John M. Lynham, of Washington, D. C., with whom Mr. Arthur P. Drury, Mr. John E. Powell and Mr. Laidler B. Mackall, all of Washington, D. C., were on the brief, for appellant.

Mr. Alton S. Bradford, of Washington, D. C., with whom Mr. G. Lynn Woodruff, of Washington, D. C., was on the brief, for appellee.

Before CLARK and WILBUR K. MILLER, Circuit Judges, and CURRAN, District Judge, sitting by designation.

CURRAN, District Judge.

This is an appeal from a judgment of the District Court of the United States for the District of Columbia for $5,000 in favor of the appellee in an action brought by her on the policy of insurance on the life of her husband, Patrick T. Flynn, in which she was named beneficiary.

The policy, written in 1940, contained a provision "that death of the insured resulting directly or indirectly from *participating in aeronautics,* as passenger or otherwise, or from exposure to any hazard incident thereto, is a risk not assumed by the Company under any terms of the policy; but in the event of such death the Company will pay to the beneficiary the amount of the reserve under the policy." (Italics supplied.) Patrick T. Flynn met his death August 5, 1946. The complaint charged that while the policy was in full force and effect the insured met his death. It was conceded that at the time of his death he was a passenger in a passenger aeroplane owned and operated by the United States Navy. In its answer appellant admitted the issuance of the policy and averred that the death of the insured resulted directly or indirectly from participating in aeronautics as passenger or otherwise, or from exposure to a hazard incident thereto, which was a risk not assumed by the Company under any of the terms of the policy, and that appellant's only liability was to pay the beneficiary $353, the amount of the reserve which was thereby tendered.

The pretrial hearing was had on April 1, 1947, and a pretrial order signed in which it was stipulated, among other things, that the insured died on August 5, 1946 while a passenger in an aeroplane and that if a rider respecting death of the insured while a passenger in an aeroplane was properly a part of the policy, its provisions had application to the death of the insured and that "the only dispute is as to whether or not such provisions was (sic) properly made a part of the policy."

The appellee's position was that the rider was not properly made a part of the policy so as to limit the appellant's liability thereunder, and appellant's position was that the rider was attached to and made a part of the policy when it was originally issued, delivered to and accepted by the insured. Before trial appellee made a motion to correct a stipulation contained in the pre-trial proceedings with respect to the date of delivery of the policy, the stipulation being: "It is further stipulated that the policy involved was delivered to the insured at Burbank, California, on July 29, 1940." The court ordered that the said pre-trial order be amended by striking the foregoing stipulation therefrom and leaving the date of the delivery of the policy to the insured to proof by the parties, and further ordering that the trial of the cause be not set prior to thirty days from date so as to afford the appellee the opportunity of taking a deposition respecting delivery of the policy.

The case was tried in the District Court before a jury on the issue defined in the pre-trial order, namely, whether or not the special aeronautics provision rider was attached at the time of the issue and acceptance of the policy by the insured. At the conclusion of the trial both sides made motions for directed verdicts, appellant's motion being made on the ground that the only issue in the case was whether the special aeronautics provision rider was a part of the policy at the time of its issuance and acceptance by the insured on August 1, 1940, and appellee's motion being made on the ground that the rider did not apply to the death of the insured, contending that the insured was in no manner whatsoever participating in aeronautics.

The pre-trial order provided "that if this rider was properly a part of the policy * * * its provisions had application to the death of the insured." The trial justice amended the pre-trial order so as to remove this proviso, overruled appellant's motion for directed verdict and granted appellee's motion on the ground that as a matter of law the provisions of the rider had no application to a passenger in an aeroplane.

The case is before us on alleged errors committed by the trial court (1) in declining to follow the pre-trial order defining and limiting the issues of the case; and (2) in deciding as a matter of law the special aeronautics provision rider had no application to the death of the insured while a passenger in the aeroplane. We are unable to agree with the contention that the trial court was bound by the pre-trial order of April 1, 1947, limiting the issues in this case. The pre-trial order provided "that the subsequent course of this action shall be governed by the following stipulations *unless modified by the Court to prevent manifest injustice.*" (Italics supplied.) Rule 16 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that the pre-trial order "when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice * * *." There was ample authority for the trial court to amend the pre-trial order and it seems very clear to us that a manifest injustice would have resulted had not the trial court taken the action it did. It follows, therefore, that appellant's contention in this respect is entirely without merit.

Appellant's second contention, that under the provisions of the policy there is no liability for the death of an aeroplane passenger unless the insured is traveling on a "commercial flight" as defined in the policy, has been the subject of discussion among the courts of this country for quite some time.

Appellant contends that the addition of the words "as passenger or otherwise" in the special aeronautics rider removes any

ambiguity as to whether or not the insured was engaged or participating in aviation or aeronautics and that the aforementioned words are all inclusive and within their plain import include one who has no other relation to the flight than a mere passenger. Appellee contends that the clause "participating in aeronautics, as passenger or otherwise" does not, in the facts of this case, exempt appellant from liability since such clause does not relate to a mere passenger on board a plane.

Ambiguities, doubts and uncertainties, if any, as to the meaning of the policy must be resolved in favor of the insured. Appellant insists, however, that the provision in the policy excluding liability if death results from "participating in aeronautics, as passenger or otherwise" is not ambiguous but is plain and includes one who has no other relation to the flight than a mere passenger, irrespective of the role the insured plays in the occupied space on the plane on its fatal trip.

We are unable to agree with this contention.[1] The language of the policy as it is written relieves the insurer of liability in consequence of death resulting from participation in "areonautics, as passenger or otherwise." As Mr. Chief Justice Groner so aptly said in the Clapper case[2] "If the words used had been 'resulting from—a flight'—the case would be simple, for it is obvious that the death of Mr. Clapper, [the insured] was in consequence of—a fight. * * *" In the instant case, however, the inclusion of the word "aeronautics" involves a different problem for, in our view, "aeronautics" means the science of the art of aero-navigation. The word "aeronautics" has been variously defined. The New Century Dictionary (1st ed.) terms it "the science or art of aerial navigation." Webster's New International Dictionary (2d ed.) defines the word "aeronautics" as "the science that treats of the operation of aircraft." It is clear to us that the insured, on the occasion of his death, was not "participating in aeronautics." Moreover, if the flight to be within the exemption of the policy must be one pertaining to the science of operating aircraft, it follows that a mere passenger in an aeroplane is outside its provisions.[3] As was said by the United States Court of Appeals for the Eighth Circuit, quoting from Chappell v. Commercial Casualty Ins. Co., 1938, 120 W.Va. 262, 197 S.E. 723, 724, "A mere passenger has no part in the art of the aeronaut and does not study, apply, or advance the science of aerial navigation. * * * *"[4]

As we have stated, appellant contends that the addition of the words "as passenger or otherwise" includes one who has no other relation to the flight than a mere passenger. If that is what is meant the policy certainly does not say so. This indeed would be a strained interpretation when the policy is considered in connection with the words "participating in aeronautics" since aeronautics, as we know, is the science which treats of the operation of aircraft. It is possible for a passenger to participate in aeronautics. In the case of First National Bank of Chattanooga v. Phoenix Mutual Life Insurance Company, D.C., 57 F.2d 731, 753 affirmed 6 Cir., 1933, 62 F.2d 681, the decedent owned the aeroplane, hired the pilot, designated the flight and insisted that the pilot take off in weather that was so bad that even the pilot, his employee, was reluctant to obey. The Court said "I am of opinion one who directs when the flight is to be made and who interposes his judgment as a finality with reference to conditions which indicate that a flight may be safely made or otherwise, that is, judges as to the fitness of the weather, a most important element entering into aviation, may be said to have participated in operation. * * *" This is a clear example of a passenger participating in aeronautics.

---

[1] See Boye et al. v. United Service Life Insurance Company, 83 U.S.App.D.C. 306, 168 F.2d 570, and the court's construction of a clause in a policy of life insurance which limited recovery to premiums paid if death was "due to operating or riding in any kind of aircraft."

[2] Clapper v. Aetna Life Insurance Company, 81 U.S.App.D.C. 246, 247, 157 F. 2d 76, 77.

[3] Clapper v. Aetna Life Insurance Company, supra.

[4] Mutual Benefit Health & Accident Association v. Bowman, 8 Cir., 99 F.2d 856, 859, certiorari denied 306 U.S. 637, 59 S.Ct. 485, 83 L.Ed. 1038.

Such is not the case before us for all that the insured was doing was traveling under orders in a passenger type aeroplane being flown by the United States Navy between two points. It would be going too far to say that as to the insured on this particular flight he was "participating in aeronautics;" or that this clause with the added words covered a mere passenger only. " * * * even if this interpretation is subject to challenge, the same result would follow, since at best the phrase is so ambiguous as to compel a decision in favor of the insured. * * * If the Insurance Company had meant what it now says it meant, the opportunity was at hand when the policy was issued to express its position in plain words. If, for example, it intended to exclude *any* death resulting from an airplane flight, words of plain import could have been found so that no question could be raised. In the deliberate use of a word or phrase having a well recognized technical meaning, it is a fair conclusion that the insurer meant that something more must be shown than the mere use, as a passenger, of the facilities of an airplane." [5]

As we said in Hayes v. Home Life Insurance Company: [6]

"The rule that a real ambiguity in an insurance policy is to be construed against the company, is not a rule of convenience or a mere technicality of legalists. It is based upon sound public policy. Insurance contracts are written by the companies. Those companies are equipped with able counsel and other experts in the field, not only in their separate organizations but in their national associations. From their point of view, there is not the slightest reason why the terms of a contract should not be crystal clear. Nevertheless, the custom has arisen of writing these contracts in long, complicated and technical phraseology. No doubt that custom has a basis in the experience. of the companies, just as the use of unintelligible language in many legally drawn contracts has a basis in the dim historical past. But these insurance contracts are then presented and sold to ordinary individuals in printed form and by expert salesmen. Moreover, and most important, life insurance has become a major, if not the major, factor in the concern of men generally for the protection of their families and dependents. But these individual prospects are, in vast majority, not informed in the obscurities of insurance expertise and not equipped to understand other than plain language. If the companies were permitted to write clear clauses of liability at one point and obscure negations of liability at another, and to maintain successfully the prevalence of the latter over the former, the temptation to sell on one clause and defend on the other would be dangerous. If there be an ambiguity in a contract, it is the fault of the company and of the company alone, and, as we have said, the companies are fully equipped to avoid ambiguities. The great public concern in life insurance requires that they be compelled to do so."

If the insurer meant to exclude from the provisions of the policy any passenger on an aeroplane flight except one traveling in a commercial plane between established airports, no necessity existed for the use of words of art such as "participating in aeronautics". In our view a mere passenger does not come within the exclusion clause and therefore the judgment below must be affirmed.

Affirmed.

---

5 Clapper v. Aetna Life Insurance Company, supra, 81 U.S.App.D.C. 247, 248, 157 F.2d at page 77; Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 84, 85, 54 S.Ct. 590, 592, 78 L.Ed. 1137; "The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policyholder who is often without technical training, and who rarely accepts it with a lawyer at his elbow. So if its language is reasonably open to two constructions, that more favorable to the insured will be adopted."

6 83 U.S.App.D.C. 110, 168 F.2d 152, 154.