## AETNA LIFE INS. CO. v. REED.

### No. 10005.

Court of Civil Appeals of Texas. Austin.

Jan. 23, 1952.

Rehearing Denied Feb. 20, 1952.

Boyle, Wheeler, Gresham & Davis by J. D. Wheeler all of San Antonio, for appellant.

Coleman Gay, Austin, for appellee.

GRAY, Justice.

Appellee is the named beneficiary in a policy of insurance issued by appellant on the life of David C. Reed. The policy contained a clause providing for the payment of double indemnity in the event of the accidental death of the insured: "If such death does not result * * * from an aeronautic flight * * * then the Company will pay a sum equal to the sum described in this policy as the sum insured in addition thereto."

The insured was killed in an airplane crash on May 2, 1948.

Appellant filed this suit seeking a declaratory judgment to the effect that the death of the insured fell within the quoted exception and enjoining appellee from instituting any suit against appellant for recovery of double indemnity by reason of the policy. Appellee filed a cross-action seeking recovery of double indemnity. The face value of the policy was paid to appellee; however, such payment was made and accepted without prejudice to the rights of the parties with respect to the double indemnity provision.

A nonjury trial was had on an agreed statement of facts substantially as follows:

On May 28, 1922, appellant issued its policy for Twenty-five Thousand Dollars ($25,000.00) to David C. Reed. Laura Moses Reed, wife of the insured and appellee herein, is the beneficiary. There is attached to the policy a double indemnity rider providing for the payment of an additional sum of Twenty-five Thousand Dollars ($25,000.00) in the event of accidental death but expressly excluding death resulting from an aeronautic flight or submarine descent. On May 2, 1948, David C. Reed, the insured, Gilbert Claud Wilson and Cloise A. King left Dallas, Texas for Washington, D. C., in a Beachcraft-Bonanza plane. Wilson was a chemist who had developed a process for dehydrating vegetables and in the development of the process David C. Reed supplied all or most of the money for the venture. The appellee and the executors of the Reed Estate claimed that Wilson was indebted to Reed in various sums of money aggregating more than $100,000.00. King is an accountant in charge of the accounts of the business. On May 2, 1948, it became necessary for the three men to go to Washington to confer with representatives of the

Federal Government relative to tax matters relating to the plant. Wilson was a licensed pilot and procured a Beechcraft-Bonanza 4-passenger cabin plane from a partner in another canning plant in which Reed owned no interest. Reed was not an airplane pilot and had never undertaken to fly a plane or learn to fly a plane. The trip was arranged to suit the convenience of the three men. Wilson was the pilot who operated the plane and Reed took no part in the operation of the plane. Reed and King were at all times during the flight in the same 4-passenger cabin with the pilot.

On May 2, 1948, while the plane was in flight over the vicinity of Culpepper, Orange County, Virginia, the plane crashed to the ground, such airplane crash causing the death of David C. Reed, the insured.

Appellant has appealed from an adverse judgment and here presents four points of alleged error. These are to the effect that the trial court erred: (1) in holding that the death of the insured was not a death resulting from an aeronautic flight within the above exception; (2) in refusing to declare the death of the insured was a death resulting from an aeronautic flight within the above exception; (3) in refusing to render judgment for appellant, and (4) in rendering judgment for appellee on her cross-action.

The sole question here presented is the interpretation of the language of the exception, supra, and a determination of whether or not the language there used is clear and free from ambiguity. In determining the indemnity intended by the parties to the contract of insurance before us, and to be excluded by the exception, supra, the language there used "must be construed with reference to the subject matter of the contract in the light of the situation with which the parties were dealing." Standard Accident Ins. Co. v. Thompson, 139 Tex. 116, 161 S.W.2d 786, 789. However, since the exception undertakes to defeat a recovery, if its language is ambiguous and its meaning uncertain it must be construed strictly against appellant. McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S.W.2d 679; 24 Tex. Jur.Secs. 28 and 29, pp. 704–705.

Appellant says that the language of the exception "should be given its usual, natural and ordinary meaning as settled by antecedent judicial decisions." And cites Moore v. Life & Casualty Ins. Co., 162 Tenn. 682, 40 S.W.2d 403, which is authority for the statement. Appellant does not argue, however, that that case decides the question before us. The Court was there considering whether or not a motorcycle was within the meaning of the terms of an insurance policy insuring against accident sustained while riding in a motor driven automobile. As antecedent judicial decisions, appellant cited: Bew v. Travelers' Ins. Co., 95 N.J.L. 533, 112 A. 859, 14 A. L.R. 983, decided February 28, 1921, by the New Jersey Court of Errors and Appeals; Travelers Ins. Co. v. Peake, 82 Fla. 128, 89 So. 418, decided July 13, 1921. In the Bew case [95 N.J.L. 533, 112 A. 859] the policy of insurance provided that double indemnity would not be paid to any person sustaining "injuries fatal or non-fatal, * * * while participating in or in consequence of having participated in aeronautics." The facts were that a corporation was engaged in carrying passengers for hire in airplanes "at so much a trip, just to see Atlantic City, and for the novelty of the thing". Bew, the insured, entered the plane and occupied the seat beside the pilot—presumably he was a paying passenger. While in flight the plane went into a nose dive, crashed, and Bew was killed. The court held that the exception barred a recovery for Bew's death and said: "His presence in the plane makes him a participant in the flight which is aeronautical." In the Peake case the policy contained the same exception as was contained in the policy before the Court in the Bew case. Also, the facts were similar. Richard Johnson was engaged in carrying passengers on "short trips in the air" at the State Fair of Florida. Peake entered the plane as such a passenger, while in flight the plane crashed and Peake was injured. The Court cited the Bew case and held that Peake was participating in

aeronautics within the meaning of the exception.

With due regard for those decisions, we think they are not decisive of the question here presented. Neither do we think that, because of them, it is necessary for us to discuss the rule of stare decisis because it is our opinion that we must construe the language of the exception in accordance with the rules of construction herein announced.

In King v. Equitable Life Assurance Society, 232 Iowa 541, 5 N.W.2d 845, 846, 155 A.L.R. 1022, decided in October, 1942, there was before the Court a policy issued in 1923, providing for double indemnity for accidental death "provided that death * * * shall not be * * * caused * * * by engaging as a passenger or otherwise in submarine or aeronautic expeditions." The insured met his death in the crash of a plane in which he was traveling as a fare paying passenger. As against the contention that the language of the policy should be interpreted as of the date it was issued the Court said: "We think the date is here immaterial. Although there was a tremendous increase in the volume of aviation between 1923 and 1941, there was no basic change in this means of transportation. Nor was there variance in the meaning of the words 'aeronautic expedition'."

The Court laid stress on the word "expeditions" and held the insurance company liable. No Texas authority construing the language before us has been called to our attention and we have found none.

Except as noted, supra, it is not suggested by either of the parties that the law of Texas requires the application of any principals to the facts before us different to the general rules announced, supra, and as have been announced by the Courts of other jurisdictions. In fact, both parties rely on decisions from jurisdictions other than Texas. We find that thirty-eight aviation clauses contained in various insurance policies have been construed by the Courts of other jurisdictions. See annotations in 155 A.L.R. 1035 to 1055 and in 17 A.L.R.2d 1052 to 1067. However, the exception before us appears to have been before an appellate court only once. Clapper v. Aetna Life Ins. Co., 81 U.S.App.D. C. 246, 157 F.2d 76, 77. There the insured met his death as the result of a midair collision of the plane in which he was riding as an invited guest passenger and another plane. In holding that the death of the insured was not the result of an aeronautic flight, the Court said that "aeronautics" means "the science that treats of the operation of aircraft," and the word "aeronautic" pertains to aeronautics or aeronauts, and went on to say that in order to come within the exception, the flight must be one pertaining to the science of operating aircraft, thus leaving a passenger in the plane outside of the provisions of the exception. The Court fortified its holding by saying the exception was so ambiguous as to compel a decision in favor of the insured.

In Webster's New International Dictionary, 2d Ed., "aeronaut" is defined as "one who operates an airship or a balloon; also, one who travels in an airship or balloon." "Aeronautic" is defined as "pertaining to aeronautics or aeronauts," and "aeronautics" as "The science that treats of the operation of aircraft; also, the art or science of operating aircraft."

The appellate courts are not in accord as to the conclusions reached in construing aviation clauses contained in insurance policies before them. Some stress the definition of Mr. Webster that "aeronautic" pertains to aeronautics or aeronauts, and that "aeronautics" is "The science that treats of the operation of aircraft; also, the art or science of operating aircraft." Other decisions stress accompanying words, and others resolve that ambiguity exists in the language selected by the insurance company and apply the rule of construction favorable to the insured.

At best we think the interpretation of the exception before us presents a question of doubt as to whether or not the words "aeronautic flight" there used must be given the meaning requiring the insured to have been engaged in the actual operation of the plane, or whether his presence in the plane brought him within the terms of the exception. To say that

there is doubt as to which interpretation should be applied admits that either is subject to challenge and forces the conclusion that the exception is ambiguous and requires that it be interpreted against the insurance company and favorable to the insured.

The trial court found the death of the insured "was not the result of an aeronautic flight." This finding, we think, is amply supported by the evidence when Webster's definition of "aeronautic" is applied.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice.

I respectfully dissent.

The majority opinion rests upon the Clapper case, 1946, 81 U.S.App.D.C. 246, 157 F.2d 76. If that decision is sound it should be followed; if not it should be disregarded.[1]

Construing the same policy provision under essentially identical facts Judge Groner, in the Clapper case [81 U.S.App.D.C. 246, 157 F.2d 77], said:

"It is quite true that no case is cited and we have found none in which the lia-

bility exclusion-clause is in precisely the same words as in the present case, but cases, state and federal, construing language more or less similar may be cited in large numbers. In such cases the holding was that the clause 'participating or participation in aeronautics,' or 'engaged in aeronautic operations, activity or expeditions,' does not cover the case of a person who had no other relation to the flight than as an ordinary passenger.

."Here the language of the policy is, as we have pointed out, somewhat different, and as it is written it relieves the insurer of liability in consequence of death resulting from—an aeronautic flight. If the words used had been 'resulting from—a flight,'—the case would be simple, for it is obvious that the death of Mr. Clapper was in consequence of—a flight.[2] The actual language, however, is 'an aeronautic flight,' and the inclusion of the word 'aeronautic' when considered in the light of its accepted meaning involves a different problem. We think undoubtedly the parties intended to use the phrase in the sense generally recognized in air travel. Webster's New International Dictionary defines the word aeronautics as 'The science that treats of the operation of aircraft,' and the word aeronautic as 'Pertaining to aeronautics or aeronauts.' Certainly, as appellee

---

1. In Faron v. Penn. Mutual Life Ins. Co., D.C., 77 F.Supp. 228, 231, the Court after referring to the Clapper case said: "Confronted by this authority the court will resolve its personal doubts regarding the meaning of Policy No. 1994456 and order judgment to be entered in favor of plaintiff."

In the case of Braden-Sutphin Ink Company v. Aetna Life Insurance Company, No. 18991 Law, in the United States District Court for the Western District of Ohio, Eastern Division (1938, no appeal), Braden, a passenger was killed in a plane crash and in holding the company not liable for double indemnity under the same exclusion clause we have here the Court said: "That the fact may be, or that the Court may believe, that airplane flights may be less hazardous today than in 1923, when the policy was issued, cannot extend the coverage or the hazards insured against. It is true that airplane flights were regarded as

quite hazardous in 1923, and the double indemnity provision of the policy expressly excluded death from air flights as an event calling for double response. I agree that the matter should be resolved favorable to the insured (beneficiary) if there is doubt about the meaning or if the court could conclude as a matter of law that the flight in which plaintiff's decedent met his death was not of the kind excluded by the provision of the policy. It may be conceded that the descriptive terms for flight by airplanes have changed over the years, but, as I see it, 'an aeronautic flight' in 1923 was nothing different than the transportation by plane of the present day."

2. This in spite of the fact that the word flight has many meanings: A flight of arrows, of stats, of airplanes; the act or mode of flying; mental agitation; to flee, as from a bumble bee, etc., etc.

concedes, insured on the occasion of his death was not 'participating' in aeronautics. Moreover, if the flight to be within the exemption of the policy must be one pertaining to the science of operating aircraft, it follows that a mere passenger in an airplane is outside its provisions. For, as was said by the Eighth Circuit, 'A mere passenger has no part in the art of the aeronaut and does not study, apply, or advance the science of aerial navigation.' "

It seems clear to me that Judge Groner was misled by cases construing aviation exclusion clauses in insurance policies using the words "participating" or "engaged" in "aeronautics," which held that since a mere passenger took no part in the operation of the plane he was not "engaged" or "participating" in "aeronautics."

In my opinion there is a fundamental distinction between those cases and the Clapper and this case. The difference is that the present policy has no requirement that the insured participate or engage in an aeronautical flight but only that his death be the result of such a flight.

A policy which excluded liability for death of an insured resulting from an atomic blast, a rather technical operation, would, or at least should not receive the same construction as a policy excluding liability for death of the insured while participating or engaged in the operations producing the blast.

In my opinion the exclusion clause under consideration is plain, simple and unambiguous. The word "aeronautic" is descriptive of and modifies the word "flight." "Aeronautics" is defined as "the science that treats of the operation of aircraft." The word "flight" as here used necessarily means the act or mode of flying.

If flying in a powered aircraft operated by a licensed pilot who is presumably skilled in the science of aeronautics is not an "aeronautical flight" then the words, to me, are devoid of meaning.

Since, in my opinion, Mr. Reed's death resulted from an aeronautical flight, judgment should have been for appellant.