WEBB, Appellant, vs. CALL PUBLISHING COMPANY and another, Respondents.

*November 17—December 14, 1920.*

*Libel and slander: Retraction as affecting actual damages: New trial: Excessive damages: Appeal: Part of order not appealed from.*

1. The determination of the damages sustained by plaintiff by reason of the printing of a libelous article in a newspaper is peculiarly a question for the jury, and the trial court cannot set aside the verdict on the ground that the damages awarded by the jury were excessive unless they were so excessive as to create the belief that the jury had been misled by passion, prejudice, or ignorance.

2. A verdict awarding $1,000 as actual damages for the publication of a newspaper article charging that a young man whose occupation called for character, integrity, and trustworthiness was a forger, is not so excessive as to indicate that the jury was moved by passion, prejudice, or ignorance.

3. Where the plaintiff made no claim for exemplary damages, evidence that defendant, shortly after publishing the libelous article, published a retraction thereof which it gave the same circulation as the libelous article, is material as showing that the damage to plaintiff was not as great as if the libel had not been retracted.

4. Sec. 4256a, Stats., making a retraction published within a reasonable time a defense against any imputation of malice and against the recovery of any damages except actual damages, does not imply that evidence of such retraction is inadmissible in mitigation of actual damages.

5. Where the defendant was awarded a new trial on condition that it pay the costs of the first trial, and on plaintiff's appeal the order was affirmed on a ground which would not require the defendant to pay costs, that part of the order relating to costs, not having been appealed from by the defendant, will not be disturbed.

APPEAL from an order of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

Libel. The plaintiff in this action is a young man twenty-two years of age. He was born and raised in Rankin county, Mississippi, has a high-school education, and is the son of respectable well-to-do parents. He came to Racine sometime during the forepart of 1918 and secured employment in the factories. For a considerable length of time he lived with one William Gause, in whose household he was considered almost a member of the family, and was introduced by them to their circle of friends. While living with them he became acquainted with a number of people and began to form friendships and enlarge his acquaintanceship. In the spring of 1919 he obtained a position as salesman with the Ever-Grip Manufacturing Company at Peoria, Illinois, and while on the road for them he received a letter from a friend at Racine stating that the police were inquiring for him. On or about the 19th day of June, 1919, he came back to Racine to see what the trouble was. At police headquarters he was informed that he was wanted at Watseka, Illinois, on the charge of forgery. He was taken into custody, confined in jail for a couple of days, and then taken

to Watseka, Illinois, where he was released because not the
man wanted by the authorities.

The defendant *Call Publishing Company* was at the time
in question the proprietor and publisher of the Racine
Times-Call, a daily newspaper which had a circulation of
6,500 copies in the city and county of Racine and elsewhere
in the state of Wisconsin and throughout the United States.
The defendant *Walter S. Goodland* was the editor and man-
ager thereof. On the 18th day of June, 1919, the said
newspaper published the following libelous article concern-
ing the plaintiff:

"LONG-HUNTED FORGER GIVES HIMSELF UP."

"*Forest Webb,* wanted at Watseka, Ill., on a forgery
charge, walked into the police station this morning and gave
himself up.

"The police have been searching for *Webb* for over a
year. He formerly lived on De Koven avenue, and worked
in a local automobile factory. When he left here he went to
Watseka, Ill., where he stopped at the most exclusive hotels
under the name of Eddie Ryan.

"It is claimed that he passed several worthless checks on
hotel-keepers in that city.

"The sheriff of Iroquois county telephoned to Racine to
be on the lookout for the man. Detectives watched his
boarding place, but it was not until today, when he walked
into the station, that they saw anything of him."

Just before returning to Racine plaintiff resigned his posi-
tion with the Ever-Grip Company and did not apply for re-
instatement therein. Upon his return from Illinois he se-
cured work in a factory at Racine.

The defendants admitted the publication of the article;
disavowed any intention to defame and injure the plaintiff
in his good name and reputation; denied that the article was
maliciously composed, printed, or published; that the article
appeared simply as a news item and was brought in by one
of its news-gatherers, and was inserted and appeared in said
paper without having been submitted to or passed upon or

,signed prior to its publication by the defendant *Goodland;* that an honest mistake was made in the publishing of said article; that on the 11th day of July, 1919, a retraction was published in said newspaper in words and figures as follows:

"Long-Hunted Forger Gives Himself Up."

*"Forest Webb,* wanted at Watseka, Ill., on a forgery charge, walked into the police station this morning and gave himself up.

"The police have been searching for Webb for over a year.  He formerly lived on De Koven avenue, and worked in a local automobile factory.  When he left here he went to Watseka, Ill., where he stopped at the most exclusive hotels under the name of Eddie Ryan.

"It is claimed that he passed several worthless checks on hotel-keepers in that city.

"The sheriff of Iroquois county telephoned to Racine to be on the lookout for the man.  Detectives watched his boarding place, but it was not until today, when he walked into the station, that they saw anything of him.

"The Times-Call desires to fully retract any charge or implication of charge of forgery or any other wrong act contained in the above heading and any text matter following the heading.

"The attention of the Times-Call having just been called to this article, investigation shows that the charges against *Mr. Webb* have not been substantiated."

The case was tried before a jury and a general verdict assessing plaintiff's damages at $1,000 was returned.  The defendants moved the court to set aside the verdict and grant a new trial, among other reasons because the court erred in refusing to receive evidence offered by the defendants on the trial and because the damages were excessive. In deciding this motion the court filed a decision in the nature of an opinion in which he held that the damages were excessive, and entered an order that the plaintiff have the option of remitting all in excess of $500 within fifteen days after the entry of the order, with the condition that the defendants pay the costs of trial, and that if the plaintiff does

not accept such option the defendants have the option of paying to the plaintiff $600 and the costs of trial. Neither party accepted the option, and thereafter, on the 5th day of April, 1920, a new trial was ordered upon payment by the defendants of the costs of the trial of this action. From this order plaintiff appealed.

For the appellant there was a brief signed by *Storms, Foley & Beck*, attorneys, and *Jerome J. Foley*, of counsel, all of Racine; and the cause was argued orally by *Jerome J. Foley*.

For the respondents there was a brief by *E. E. Gittings*, attorney, and *Wallace Ingalls*, of counsel, both of Racine; and the cause was argued orally by *Mr. Ingalls*.

OWEN, J. The court ordered a new trial because the damages were excessive. The determination of the damages sustained by the plaintiff by reason of the printing of the libelous article was peculiarly a question for the jury. The court was not at liberty to set aside the verdict on the ground that the damages, as determined therein, were excessive unless it can be said they were so excessive as to create the belief that the jury had been misled either by passion, prejudice, or ignorance. *Donovan v. C. & N. W. R. Co.* 93 Wis. 373, 67 N. W. 721; *Flannigan v. Stauss*, 131 Wis. 94, 111 N. W. 216. We are unable to agree with the trial court that the verdict in this case indicates passion, prejudice, or ignorance on the part of the jury. The article was a most serious reflection on plaintiff's character. No more serious charge can be lodged against a young man just starting out in life as plaintiff was, especially in view of the position he then held. It constituted a charge most serious to a young man seeking employment calling for character, integrity, fidelity, and trustworthiness. The jury were justified in finding that substantial damages to plaintiff followed as a result of the publication of the article, and we do not think the court can say as a matter of law that five or

six hundred dollars marks the limit of that damage. We do not think the verdict of the jury at all unreasonable, and we feel that their verdict for $1,000 was entirely warranted under the facts and circumstances of the case. While we do not think a new trial should have been granted for the reason assigned by the trial court, we have concluded that it was properly granted for another reason.

The court excluded evidence of the publication of the retraction. This was done because plaintiff waived all claim for punitory damages, and the court seemed to be of the view that the retraction was admissible only in mitigation of that class of damages. The defendants argue that it is admissible as bearing upon the actual damages resulting to the plaintiff from the misconduct of the defendants. It is argued that the plaintiff should recover no more than his actual damages, and that the amount of damages resulting from the publication of the libel must have been reduced by the retraction thereafter published. We do not see how this logic can be assailed. Some who read the original article must have read the retraction and it must have had an influence in repairing the damage resulting from the publication of the first article. As the plaintiff was entitled to recover only for damages actually sustained by him by reason of defendants' misconduct, the efforts made by the defendants to repair the damage done should have been placed before the jury for their consideration in conjunction with the publication of the original article and all other facts and circumstances in the case.

The court was possibly misled by the provisions of sec. 4256a, Stats. That provides that a retraction published within a reasonable time may be introduced upon the trial of any such action as a sufficient defense against any imputation of malice and against the recovery of any damages except actual damages. By virtue of the provisions of that section, a retraction seasonably made operates as a complete defense against the recovery of exemplary damages.

It does not necessarily follow, however, that it is not admissible as bearing upon the question of actual damages. With reference to that class of damages the statute is silent. The question of the admissibility of a retraction for the purpose of enabling the jury to determine the actual damages is therefore to be governed by the ordinary rules of law.

We find it stated as a general proposition in many cases that a retraction is admissible for the purpose of mitigating damages, and that is the rule laid down by Newell in his work on Slander & Libel. (3d ed.) pp. 1087, 1088. In nearly all the cases where that proposition has been laid down, however, the question of punitory damages was involved, and the question whether the retraction is admissible for the purpose of mitigating actual damages was not discussed. In 17 Ruling Case Law, 448, it is said: "Since evidence of retraction is admitted in mitigation of damages on the theory that it tends to negative the existence of actual malice, it follows that such evidence of retraction can be received in mitigation of exemplary damages only." We have examined the authorities cited in support of that proposition of law. In our judgment they do not establish the principle. The principal case cited in support of that proposition is *Clementson v. Minnesota Tribune Co.* 45 Minn. 303, 47 N. W. 781. In that case plaintiff claimed actual or special damages, that is, damages pecuniary in their nature, and also general damages, that is, damages not pecuniary in their nature, such as to reputation, etc. The defendant interposed a general demurrer to the complaint that it did not state a cause of action, the ground of objection being that it did not allege the service before suit of notice on the publisher of the newspaper specifying the statements in the libelous article alleged to be false and defamatory. The decision simply held that the notice was not necessary in an action to recover special damages, and that as to the special-damage feature the complaint stated a cause

of action.    The decision was based entirely upon a construction of the Minnesota statute, and cannot be regarded as authority for the general proposition stated in 17 Ruling Case Law, above quoted.

In Massachusetts exemplary damages are not recoverable in an action for libel.    Only actual damage may be recovered.    In that state it is held that a retraction is admissible as bearing upon the question of actual damages.    *Ellis v. Brockton Pub. Co.* 198 Mass. 538, 84 N. E. 1018.    In that case it was said: "The publication of a retraction, complete in character and conspicuous in position, might be found to have a material effect in diminishing the mischief caused by the libel, and thus substantially reduce the damages sustained by the person libeled."    That appeals to us as good sense.    Where a newspaper publishes a libelous article concerning an individual and within a reasonable time thereafter publishes a full and complete retraction, the latter article must in some degree neutralize the damaging effect of the first article; and where the amount of damages which the plaintiff has sustained by reason of defendant's misconduct is involved, the jury is entitled to have before it not only the original article which caused the damage, but the subsequent retraction as well, so that it may form an intelligent opinion as to the net damage plaintiff has sustained.

The trial court excluded evidence of the retraction, and we think this was error for which a new trial should be granted.    While defendants should not be required to pay costs in order to secure a new trial for this reason, they have not appealed from that part of the order, and, consequently, we cannot disturb it.    It follows that the order appealed from should be affirmed.

*By the Court.*—Order affirmed.