### SOLEY v. AMPUDIA et al.
### No. 13101.

United States Court of Appeals
Fifth Circuit.

June 30, 1950.

John Owen Collins, Ancon, Canal Zone, for appellant.

Norman D. Archer, Ancon, Canal Zone, for appellees.

Before HOLMES, McCORD and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The trial Court, ruling upon demurrers, dismissed the complaint of Benjamin Polycarp Soley which sought from Pasqual Ampudia, Christopher E. Harewood and Local 713, United Public Workers of America, C. I. O., damages because of alleged slanderous remarks made by the two individuals, Ampudia being the president of Local No. 713, and Harewood the secretary and treasurer of Red Tank Chapter of Local 713.

In its orders sustaining the demurrers, the trial Court expressly based its ruling on specified cases.[1] Consideration of these rulings makes it clear that the Court was of the opinion that the utterances of the defendants alleged to be slanderous were qualifiedly privileged and, apparently further thought that malice had not been sufficiently alleged. However, the cases relied upon by the trial Court, while recognizing the protection of a qualified privilege in good faith utterances by a union official, acting under a moral duty, and by means reasonably adapted to protect the union's interest, each likewise recognize that the defense of qualified privilege may be overcome by the proof of actual or express malice. We think the allegations of the complaint in the present case are sufficient to allege the existence of actual malice inducing the utterances of the alleged slander, and also disclose that the means employed

1. Merkel v. Carter Carburetor Corp., 8 Cir., 175 F.2d 323; Dickins v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, 84 U.S. App.D.C. 51, 171 F.2d 21; Blake v. Trainer, 79 U.S.App.D.C. 360, 148 F.2d 10; Bereman v. Power Pub. Co., 93 Colo. 581, 27 P.2d 749, 92 A.L.R. 1024; Emde v. San Joaquin County Central Labor Council, 23 Cal.2d 146, 143 P.2d 20, 150 A.L.R. 916.

were not reasonably adapted to protection of the claimed privileged interest. The Court therefore erred in sustaining the demurrers of the individual defendants.

The complaint charges that the utterances were made with knowledge of their falsity, and maliciously, because the complainant had been active in attempting to remove all communistic influences from the union by seeking to force the resignation of the defendants and others whose statements and conduct had aroused suspicion. If upon the trial the complainant established this claim, the asserted defense of privileged communication would be unavailing. Blake v. Trainer, supra. Furthermore, the complaint alleges that the utterances were made, not in a closed union meeting, but in an open meeting to which members of the public generally were present. In these circumstances, the statement that the speaker would wait until another time actually intensified the slander, since with the remarks already made in public, the members of the audience could well believe that more serious charges could and would be made against the complainant. Under the provisions of the Canal Zone Code,[2] as a matter of pleading, the charge of malice, rendered legally ineffective the defense of privileged communication.

■ There can be no question of the sufficiency of the allegations of damage. It is alleged that as the result of the slander the complainant and his family "have been ostracized by their fellows, he has been and is insulted wherever he goes among his fellows, his wife is 'cut' by former friends, and his sons have been cruelly beaten by boys who have embraced the errors of their elders." The slander is charged also to have destroyed all complainant's prospects of a profitable laundry business which Soley had already begun.

■ The remaining question in the case is whether the statements charged to have been made were defamatory, and if so, whether the association of Local No. 713 may be held liable therefor. As recited in the complaint, the nature of the utterances, and the circumstances under which made, were that at a monthly meeting of the Red Tank Chapter, at which a play was staged to depict the benefits of union membership, to which the public had been invited and members of which were present, and after the play, "The Chairman of the Chapter introduced Harewood as a speaker. Harewood made no speech, but only turned to Soley and pointing at him said: 'You, Brother Soley are a stooge, an informer and a stool-pigeon for the American Legionnaires and the American Federation of Labor.' Harewood then left the speaker's platform and sat in his secretary's chair. The Chairman then introduced Ampudia, as President of Local 713, and guest speaker of the evening. Ampudia walked to the rostrum, saluted the audience, and then said: 'You, Brother Soley, take this down and write it down.' Soley took out pencil and paper, and then Ampudia continued: 'I, Pasqual Ampudia, President of U. P. W. 713, CIO, seventeen thousand strong, tell you this: You are the informer, news carrier, stooge and stool-pigeon for the American Federation of Labor and the American Legionnaires, you are a traitor to the Union, you should be ashamed, go back and tell them that I Pasqual Ampudia, President of Local 713 tells you so.' Ampudia made no speech but sat down in his chair." It is alleged that at a subsequent meeting of the Chapter, in addressing an audience of members, and visitors who were not members, Ampudia said: "I have important information to give but Brother Soley, the Union traitor, informer, stooge and stool-pigeon for the American Legionnaires and A. F. of L. is here. I'll give it another day."

The complaint alleges the innuendo of the expressions of Ampudia and similarly of

2. "A privileged publication is one made
* * *
"In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent * * *." Title 3, § 45, Canal Zone Code 1934.

the expressions of Harewood.[3] The falsity of the charges, and that the defendants knew they were false, is averred.

The Civil Code of the Canal Zone expressly establishes, among other personal rights, the right of protection from personal insult, from defamation, and from injury to personal relations. It is declared that defamation is effected by libel or slander, and slander is defined as "a false and unprivileged publication other than libel, which * * * 3. Tends directly to injure [the person] in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits * * * (or) 5. Which, by natural consequence, causes actual damage."[4]

We think it clear that the allegations of the complaint, when considered upon demurrer, are slanderous within the terms of the statute. Indeed, if the facts as alleged be found true by a jury, the result of their utterances would not be other than as stated by the complainant. There are present in the case issues of fact which should be determined by a trial and not foreclosed by a ruling upon demurrer. The complaint stated a cause of action against the defendants Ampudia and Harewood.

■ There were several efforts to effect service of summons upon the defendant Local 713, and the dismissal of the complaint as to this defendant was apparently predicated by the Court upon the failure to find and serve a proper officer, and without consideration of the merits. However this may be, we find nothing which takes the claim attempted to be asserted against the association defendant out of the general rule that a corporation or association can not be held liable for slanderous utterances of its officers or members unless it has either authorized or ratified such utterances. Here there is no claim of authorization or ratification.

The judgment dismissing the complaint as to the defendant Local 713, is affirmed. The same judgment as to the individual defendants Ampudia and Harewood is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Judgment affirmed in part and in part reversed and remanded.

3. "As used by Ampudia and understood by his audience, the term 'Informer,' meant that Soley was informing persons who were hostile to the Union about activities of the Union that Ampudia and his fellow officers of Local 713 were trying to keep quiet. The only thing that Soley was trying to do was to purge the Union of the curse of Communism, and this was in perfect keeping with the attitude of the C. I. O. in the United States at that time. His loyalty was of a higher type than that of Ampudia. Soley denies the charge that at any time he was an 'informer.' As used by Ampudia, the term 'news carrier' as applied to Soley was really a repetition of the term 'informer,' and its implications are the same. As used by Ampudia the term 'stooge' as applied to Soley was a charge that Soley was being maintained in the Union by a person or persons who were inimical to the Union and its purposes, and it was so understood by most of the people present, both union and non-union people. As used by Ampudia the term 'stool pigeon' applied to Soley meant, and was so understood by most persons present, that Soley was in the pay of some bureau of the Government for the purpose of keeping it informed of the activities of the Union. As used by Ampudia the term 'traitor' applied to Soley was a charge that embraced all the other epithets hurled at him, and was understood by the persons present as charging him with disloyalty to the Union, which had already done much to alleviate the working conditions of the non-American employees of the Government on the Canal Zone. As a matter of fact he was not disloyal to the Union but was doing his best to rid it of the taint of Communism, and to get rid of the officers who were suspected of sympathy with Communism."

4. Title 3, §§ 41, 42 & 44, Canal Zone Code 1934.