Jesse B. MANBECK, Appellant,

v.

Gerald S. OSTROWSKI, Appellee.

No. 20203.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 15, 1967.

Decided July 28, 1967.

Mr. Seymour J. Spelman, Washington, D. C., with whom Mr. William Reback, Washington, D. C., was on the brief, for appellant.

Mr. Joseph Patrick Clancy, Washington, D. C., with whom Mr. Charles R. Richey, Chevy Chase, Md., was on the brief, for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellee, an attorney, sued appellant, the president of a local labor union, in slander for a statement appellant allegedly made, during a monthly meeting of the union, in which appellee was called a "shyster." The complaint, later amended to charge malice and to demand punitive damages, was countered by appellant's general denial. The action, in due course, came on for a pre-trial conference in connection with which the District Court's procedures required the parties to file statements delineating their respective positions. Appellee's statement merely reasserted the claim in his amended complaint that appellant had maliciously used

the word "shyster" at the meeting, and appellant simply repeated the denial contained in his answers. Thus, from the pretrial order, which mirrored the pleadings and pre-trial statements, but a single issue for trial was visible: whether appellant had made the defamatory remark.

That appellant might have raised another defense—a qualified privilege to say what he was accused of saying—became apparent as the trial progressed. The unfolding evidence revealed that appellee had performed legal services for the union and had submitted a bill for $25.00. The bill came under discussion during the meeting in question, attendance at which was confined to union members, who were prohibited from disclosing the occurrences thereat to third parties. An ultimately successful motion was made to disallow payment of the bill on the ground that appellee's services had not been authorized by the union. Appellant spoke in support of the motion, and in so doing is supposed to have employed the defamatory word which is the basis of this lawsuit.

In his testimony, appellee attributed the statement to personal rancor and on cross-examination said that in his original complaint he had specified that appellant had made it maliciously. Appellant's counsel then requested appellee to examine the complaint to see whether malice was mentioned. At this point, the trial judge called a bench conference during which appellant's counsel announced that his purpose was to garner support for the theory that the utterance ascribed to appellant was conditionally privileged. He added that he had inadvertently omitted raising the issue of privilege at the pre-trial conference and insisted that exclusion of the defense would be highly prejudicial to his client. The judge, however, expressing the view that "it would be utterly unfair * * * for you to inject new matter at this time," ruled that the defensive possibilities of the privilege could not be exploited. The

jury, to which, of course, the issue was not submitted, returned a verdict in appellee's favor for $5,000 as compensatory and $15,000 as punitive damages.

We conclude that the defense of privilege should have been let into the trial. We therefore reverse the judgment from which this appeal is taken and remand the case for a new trial.

I

We treat, at the outset, a contention which, were it the only one presented to us, would not require disturbance of the trial court's judgment. During the course of appellee's case in chief the trial judge, while assuring the parties that opportunities for proof would be adequate, beseeched counsel to act reasonably as to the number of witnesses called. It was later, during the presentation of appellant's case, that a problem the judge apparently had anticipated became a reality.

On the central issue—whether appellant uttered the word "shyster"—three witnesses for appellee had said that he did. After several of appellant's witnesses had sworn that he did not make the statement, his counsel made it known that there were 25 witnesses in all who would give like testimony. The judge warned that he would not allow so many and requested appellant's counsel to assess his need, adding that he would permit whatever was reasonable and would rely on counsel's good faith. After seven additional witnesses, bringing the total to twelve, had in substantially similar manner repeated the denial, the judge, *sua sponte*, halted the parade. He informed counsel that he would not tolerate further repetition but made it plain that this ruling did not embrace any evidence not cumulative in character.

Appellant urges us to hold that the refusal to hear the thirteen remaining witnesses was error. The proposition he presses is that a party is entitled as a matter of right to put on his entire testimonial display where, as here, it relates to a controlling factual issue. With this

thesis we disagree.[1] Trial courts are invested with broad discretion to determine the extent to which cumulative evidence [2] will be admitted.[3] This, of course, extends to testimonial as well as documentary offerings on a single point. We have so held as to criminal trials,[4] and nothing occurs to us suggestive of an abnormal limitation on the court's traditional authority where the case is of a civil nature,[5] albeit one involving a charge of defamation.[6] A sound exercise of judgment implies, of course, careful appraisal of all demands the search for truth may exact in the particular case. But it could hardly be said on this record that, as to the issue whether the statement was or was not made, the experienced judge presiding over the trial of this case in any way failed to give either party his just due.

## II

That appellant is supposed to have spoken upon an occasion and to a subject begetting a qualified privilege is evident from two of our past decisions. In Caldwell v. Hayden,[7] the defendant, while presiding as president over a union meeting, leveled against a fellow member charges alleged to be defamatory. Observing that "[t]he words were uttered at a meeting of the union in relation to a matter in which all the members were equally interested, and under circumstances where wide latitude will be tolerated in discussion," [8] we defined the extent of the defendant's vocal freedom by stating that "[s]o long as he acted within the limits of reasonable criticism, though he may have been mistaken, he was within his rights." [9] We said that the plaintiff, on the other hand, "by virtue of his membership in the union, and assuming to serve it, was subject to reasonable criticism in respect of the work performed for the union." [10] We added that "the presumption is that the statement was made under these circumstances without malice and for the good of the order, unless the contrary can be inferred reasonably from the language itself." [11]

We reiterated later, in Blake v. Trainer,[12] that "there is no doubt that an officer of a union has a qualified privilege when he makes a statement informing the union of any supposed dereliction of duty of its officers." [13] We declared that such "[a] priviliged occasion exists when a communication relates to a matter of interest to one or both of the parties to the communication and when the means

---

1. Appellant refers us to cases holding that a court may not limit to a specified number the witnesses who would testify to a main or controlling fact. See Annot., 5 A.L.R.3d 169, 194–196 (1966). These cases involved restrictions, imposed by rule or order, that were purely numerical in character and which for that reason, differ essentially from those resulting from an exercise of the court's general authority to control the production of cumulative evidence on a single topic.

2. Appellant's counsel admitted that the testimony of the thirteen witnesses he was not permitted to call would have coincided generally with that of the twelve he had presented.

3. Washington Times Co. v. Bonner, 66 App. D.C. 280, 290, 86 F.2d 836, 846, 110 A.L. R. 393 (1936); Campbell v. District of Columbia, 64 App.D.C. 375, 379, 78 F.2d 725, 729 (1935); District of Columbia v. Leys, 62 App.D.C. 3, 4, 63 F.2d 646, 647 (1932), cert. denied 289 U.S. 756, 53 S.Ct. 787, 77 L.Ed. 1500 (1933); Trom-

eter v. District of Columbia, 24 App.D.C. 242, 247 (1904).

4. Levin v. United States, 119 U.S.App. D.C. 156, 164 n. 13, 338 F.2d 265, 273 n. 13 (1964), cert. denied 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965); Burgman v. United States, 88 U.S.App.D.C. 184, 188–189, 188 F.2d 637, 641–642, cert. denied 342 U.S. 838, 72 S.Ct. 64, 96 L. Ed. 1347 (1951).

5. See cases collected in Annots., 21 A.L.R. 335 (1922), 48 A.L.R. 947 (1927).

6. Washington Times Co. v. Bonner, *supra* note 3.

7. 42 App.D.C. 166 (1914).

8. *Id.* at 169.

9. *Ibid.*

10. *Id.* at 169–170.

11. *Id.* at 170.

12. 79 U.S.App.D.C. 360, 148 F.2d 10 (1945).

13. *Id.* at 362, 148 F.2d at 12.

of publication adopted are reasonably adapted to the protection of that interest." [14] We specifically noted that discourse at a union meeting is a suitable vehicle for such a publication.[15] And these conclusions parallel those reached by other courts treating uncomplimentary comments made in not essentially dissimilar contexts.[16]

The situation at bar was rather obviously amenable to an application of these principles. Appellant's remarks were directed to the propriety of the fee appellee billed for services rendered the union. In this matter appellant, as its president, and his audience composed exclusively of its members, had a mutual interest; and under these circumstances the fact that appellee was the union's attorney, rather than an officer or member, did not dissipate the immunity the privilege affords.[17] It may be that appellant, in his portrayal of appellee, sought to serve a purpose other than protection of the union's treasury,[18] or went beyond

what that objective could justify.[19] But if the tendered issue of privilege should have been accepted for trial, it was for the jury to determine whether appellant's motive and the characterization it spawned exceeded limits the privilege sets.[20]

### III

The trial judge's ruling banishing privilege rested solely on the fact that the pre-trial order did not designate it as an issue, and the considerations which seemingly moved him are well documented. A fundamental objective of the pretrial conference is "[t]he simplification of the issues." [21] The pre-trial order "limits the issues for trial to those not disposed of by admissions or agreements of counsel," and the order "when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." [22] The District Court, by its own rule and implementing instructions to counsel,[23] has established comprehensive pre-trial procedures and

---

14. *Ibid.*

15. *Ibid.*

16. Wise v. Brotherhood of Locomotive Firemen and Enginemen, 252 F. 961 (8th Cir. 1918); Krause v. Bertrand, 159 Cal.App. 2d 318, 323 P.2d 784 (1958); Sheehan v. Tobin, 326 Mass. 185, 93 N.E.2d 524 (1950); Ward v. Painters' Local Union No. 300, 41 Wash.2d 859, 252 P.2d 253 (1953). See also Willenbucher v. McCormick, 229 F.Supp. 659 (D.Colo.1964).

17. See Emde v. San Joaquin County Cent. Labor Council, 23 Cal.2d 146, 143 P.2d 20, 150 A.L.R. 916 (1943); Bereman v. Power Publishing Co., 93 Colo. 581, 27 P.2d 749, 92 A.L.R. 1024 (1933); *cf.* Paducah Newspapers v. Wise, 247 S.W. 2d 989 (Ky.1951), cert. denied 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1347 (1952).

18. See, *e. g.,* Blake v. Trainer, *supra* note 12, 79 U.S.App.D.C. at 362, 148 F.2d at 12; Soley v. Ampudia, 183 F.2d 277, 19 A.L.R.2d 689 (5th Cir. 1950); Wise v. Brotherhood of Locomotive Firemen and Enginemen, *supra* note 16, 252 F. at 964–965; Willenbucher v. McCormick, *supra* note 16, 229 F.Supp. at 663–665; Arnold v. National Union of Marine Cooks and Stewards, 44 Wash.2d 183, 265 P.2d 1051, 1053, aff'd 348 U.S. 37 (1954).

19. See, *e. g.,* Blake v. Trainer, *supra* note 12, 79 U.S.App.D.C. at 362, 148 F.2d at 12; Soley v. Ampudia, *supra* note 18; Bereman v. Power Publishing Co., *supra* note 17, 27 P.2d at 751; Sheehan v. Tobin, *supra* note 16, 93 N.E.2d at 529–530.

20. Whether a communication is privileged, where the facts surrounding its publication are undisputed, is a question of law for the court. Dickins v. International Bhd. of Teamsters, 84 U.S.App.D.C. 51, 54 n. 2, 171 F.2d 21, 24 n. 2 (1948); National Disabled Soldiers' League v. Haan, 55 App.D.C. 243, 247, 4 F.2d 436, 440 (1925); Norfolk & Wash. Steamboat Co. v. Davis, 12 App.D.C. 306, 325 (1898). Whether under the circumstances there was an abuse of the privilege is a question of fact for the jury. Dickins v. International Bhd. of Teamsters, supra.

21. F.R.Civ.P. 16(1).

22. F.R.Civ.P. 16; see Cannon Eng'r Co. v. Merando, Inc., 102 U.S.App.D.C. 96, 250 F.2d 421 (1957); Owen v. Schwartz, 85 U.S.App.D.C. 302, 305, 177 F.2d 641, 644, 14 A.L.R.2d 1327 (1949).

23. D.D.C.R. 12 and accompanying Pretrial Instructions to Counsel, hereinafter cited "Instructions."

made them applicable to all civil actions "with a view to effecting the maximum narrowing of the issues in all cases prior to trial, with resulting expedition of trials." [24] Counsel are required to prepare written pre-trial statements which must "contain in concise form a concrete and precise outline of the party's version of * * * his defense * * * including his contentions as to the facts and law." [25] Counsel are admonished that a general denial will not be sufficient and that "the statement should not be a mere repetition of the pleadings;" [26] their statements are required to "set out clearly * * * disputed issues of fact." [27]

 These requirements deserve studious and sympathetic observance. We have declared that "the primary purpose of the pre-trial procedure is to 'define the claims and defenses of the parties for the purpose of eliminating unnecessary proof and issues, lessening the opportunities for surprise and thereby expediting the trial.' " [28] Only through substantial compliance with the pre-trial rules can these goals be attained. Trial counsel for our appellant, insofar as the privilege in which he sought refuge is concerned, did nothing at all in that direction and, considering the long pendency of the case before trial was reached, we take a dim view of his excuse that failure to pursue the steps essential to inclusion of that issue resulted from oversight.[29] By the same token,

the trial judge's reaction upon discovery of the omission is quite understandable.

 But while the pre-trial order may be the beginning, it is never the end of a matter of this sort. It normally "controls the subsequent course of the action," but not if it is "modified at the trial to prevent manifest injustice."[30] The judicial function does not terminate upon discovery that an issue is unspecified, but extends to a determination as to whether the ends of justice implore that the issue nonetheless be introduced into the litigation. This frequently involves a delicate balance of competing considerations, variable from case to case, in order that the decision may be soundly made. And absent perceptible irregularity in a process so largely discretionary, we are loath to disturb the result.[31]

 Yet on this record we must hold that exclusion of the issue of privilege was error. Our initial difficulty with the learned judge's ruling is that it was rested on the theme that "it would be utterly unfair" to "inject new matter at this time," and we are unable to find adequate support for that conclusion. When appellant's counsel sought to probe into the matter of privilege on appellee's cross-examination, the foundation facts for such a claim had already been adduced, either by appellee's own efforts or by cross-examination of his witnesses without objection; indeed, appellee did not himself claim either surprise or prej-

24. Instructions (preamble).

25. Instructions II–A–1.

26. *Ibid.*

27. *Ibid.*

28. Meadow Gold Prods. Co. v. Wright, 108 U.S.App.D.C. 33, 35, 278 F.2d 867, 869 (1960), quoting Rosden v. Leuthold, 107 U.S.App.D.C. 89, 92, 274 F.2d 747, 750 (1960). (Emphasis omitted.) See also Johnson v. Geffen, 111 U.S.App.D.C. 1, 3–4, 294 F.2d 197, 199–200 (1960); Brown v. Christman, 75 U.S.App.D.C. 203, 209 n. 21, 126 F.2d 625, 631 n. 21 (1942).

29. See Conlon v. Tennant, 110 U.S.App. D.C. 140, 142 n. 3, 289 F.2d 881, 883 n.

3 (1961); Meadow Gold Prods. Co. v. Wright, *supra* note 28, 108 U.S.App.D.C. at 35, 278 F.2d at 869. Counsel arguing appellant's appeal was not his trial counsel.

30. F.R.Civ.P. 16.

31. See McKey v. Fairbairn, 120 U.S.App. D.C. 250, 253, 345 F.2d 739, 742 (1965), quoting Gould v. DeBeve, 117 U.S.App. D.C. 360, 362 n. 2, 330 F.2d 826, 828 n. 2 (1964); Phoenix Mut. Life Ins. Co., etc. v. Flynn, 83 U.S.App.D.C. 381, 382, 171 F.2d 982, 983 (1948). See also Sher v. DeHaven, 91 U.S.App.D.C. 257, 199 F.2d 777, 36 A.L.R.2d 937 (1952), cert. denied 345 U.S. 936, 73 S.Ct. 797, 97 L.Ed. 1363 (1953).

udice.[32] Nor was there inquiry as to whether he would be harmed, or as to whether a continuance, or perhaps even a mistrial—steps we have approved[33]— might have been more appropriate under the circumstances as an alternative to what could amount to a grave miscarriage of justice. Certainly, before a pre-trial order is altered, the trial court's authority, and as well its responsibility, extend to a careful investigation leading to a firm basis upon which an absence of prejudice can be found. But just as surely, adequate exploration must precede a finding that prejudice will be a consequence of the modification.

Moreover, while appellant's efforts to erect the privilege met an unhappy ending, the trial encompassed appellee's demand for punitive damages, for which the trial judge's instructions permitted the jury to make an award. The rather close relationship of this aspect of the case to the treatment accorded appellant's belated effort to invoke the privilege arises from the resemblance of the issues respectively posed by appellee's insistence upon punitive damages and appellant's bid for a full exoneration based on privilege. As the judge told the jury, such damages could not be assessed unless the impugning appellation "was prompted by actual malice or ill will" or "was uttered with reckless or careless indifference to" appellee's rights and sensibilities.[34] As he further charged, the jury might, for that purpose, take into account "the nature of the defamatory statement, the circumstances surrounding its utterance," and evidence shedding light on whether appellant "acted under provocation or acted in good faith and with reasonable belief in the truth of the" statement or "whether he acted in good faith or with willful, reckless disregard of" appellee's rights. The point warranting emphasis here is that similar considerations, and the evidence thereon pro and con, would in all likelihood be the key factual elements involved in the claim of privilege had appellant been given leave to pursue it. In other words, much of what the trial involved on the existing issue of punitive damages bore importantly on the proffered issue of privilege.

We are thus unable to conclude automatically that admission of the latter would have produced either unfairness or hardship. Appellee presumably was prepared to exert his best efforts to prove an occasion appropriate for allowance of punitive damages and also to rebut appellant's evidence on that score. Concomitantly, appellant was entitled to try to negate the elements of this claim. We conclude that enlargement of the issues to include the defense of privilege would not have imposed on either contestant an additional burden disproportionate to the gain that justice always realizes when the opportunity to present one's case is maximized.[35]

## IV

We have scrutinized, but are unable to accept, appellee's position that rejection of the privilege defense was harmless. His argument is that the jury, in awarding punitive damages, necessarily found that appellant's conduct possessed a de-

---

32. Compare Johnson v. Geffen, *supra* note 28, 111 U.S.App.D.C. at 3–4, 294 F.2d at 199–200; Rosden v. Leuthold, *supra* note 28, 107 U.S.App.D.C. at 92, 274 F.2d at 750.

33. Blackwell v. Regal Cab Co., 114 U.S. App.D.C. 397, 399, 316 F.2d 398, 400 (1963); Meadow Gold Prods. Co. v. Wright, *supra* note 28, 108 U.S.App.D.C. at 35, 278 F.2d at 869; Pennsylvania Greyhound Lines v. McKenzie, 99 U.S. App.D.C. 50, 237 F.2d 204 (1956).

34. Afro-American Publishing Co. v. Jaffe, 125 U.S.App.D.C. 70, 366 F.2d 649, 661 (1966); Washington Herald Co. v. Berry, 41 App.D.C. 322, 340–341 (1914); Russell v. Washington Post Co., 31 App.D.C. 277, 281, 14 Ann.Cas. 820 (1908); see Lubore v. Pittsburgh Courier Publishing Co., 101 F.Supp. 234, 235 (D.D.C.1951), aff'd 91 U.S.App.D.C. 311, 200 F.2d 355 (1952).

35. Compare Rosden v. Leuthold, *supra* note 28, 107 U.S.App.D.C. at 92, 274 F.2d at 750; Phoenix Mut. Life Ins. Co. v. Flynn, *supra* note 31, 83 U.S.App.D.C. at 382, 171 F.2d at 983.

gree of malice that would have operated to defeat the privilege.[36] This contention, in our view, overlooks important contrasts that admission of the defense could have made possible. With privilege ruled out, the range for evidentiary presentations was narrowed, and argument and instructions to the jury on that subject were scotched. Had the trial embraced privilege, not only could its scope have expanded in these respects, but new considerations would have emerged that might have persuaded a verdict different in both its compensatory and its punitive features.

We think it clear, in the first place, that the factual picture before the jury could to some extent have been transformed. More evidence might have been forthcoming, and that which was received might have taken on a new look. The point is well illustrated when it is recalled that the occasion for the exclusionary ruling was appellant's endeavor to interrogate appellee as to why his original complaint had not charged malice. The ruling, while ostensibly outlawing only the privilege, also barred evidence favorable to appellant on the issue of punitive damages. Beyond this, the defense could have imparted to the evidence a flavor affecting other issues as well.

 The trial court instructed the jury that if appellant called appellee a "shyster," the reference was slanderous per se, and in that event proof of financial loss would not be a prerequisite to recovery of compensatory damages. Stated another way, with privilege not involved, appellant's liability for such damages could rest solely upon the utterance of the defamatory word. But when spoken upon a privileged occasion, words otherwise slanderous presumptively fall within the ambit of the privilege, and the burden rests upon the person maligned to show that they do not.[37] Thus, had privilege been an issue, appellee would have had to establish circumstances vitiating the privilege before compensatory damages could be awarded. And we cannot say that even an abortive attempt to sustain the privilege might not permissibly have worked in mitigation of compensatory damages by further illuminating the milieu in which the word supposedly was employed.[38]

 On the matter of punitive damages the trial court, as we have stated, charged in substance that it was essential that the utterance attributed to appellant was prompted by actual malice or that it was made with careless indifference to appellee's rights and feelings. Had privilege been an issue, appellant might have argued, and the trial court have instructed, that the word "shyster" was used, if at all, "under circumstances where wide latitude will be tolerated in discussion"[39] and where debate "should be uninhibited, robust,

**36.** See *supra* notes 18 and 19 and accompanying text.

**37.** National Disabled Soldiers' League v. Haan, *supra* note 20, 55 App.D.C. at 248, 4 F.2d at 441; Ashford v. Evening Star Newspaper Co., 41 App.D.C. 395, 403, 405 (1914); Montgomery Ward & Co. v. Watson, 55 F.2d 184, 187–188 (4th Cir. 1932); Willenbucher v. McCormick, *supra* note 16, 229 F.Supp. at 664–665.

**38.** Facts indicating that the degree of injury ordinarily assumed to flow from particular defamation was not sustained are admissible in mitigation of compensatory damages. Long v. Tribune Printing Co., 107 Mich. 207, 65 N.W. 108, 110–111 (1895); Webb v. Call Publishing Co., 173 Wis. 45, 180 N.W. 263, 264–265, 13 A.L.R. 790 (1920); Restatement, Torts § 621,

comment b (1938). The trier of fact may consider such relevant factors as "the character of the defamatory publication and the probable effect of the language used as well as the effect which it is proved to have had. So too, it may consider the area of dissemination and the extent and duration of the circulation of the publication." Restatement, Torts, § 621, comment c (1938). The remark in suit was allegedly made at a union meeting during a speech on union business to union members only, who were bound by union regulations to preserve the confidentiality of the proceedings. Assertion of the privilege might have given additional color to the effort to minimize appellee's actual injury.

**39.** Caldwell v. Hayden, *supra* note 7, 42 App.D.C. at 169.

and wide-open, and \* \* \* may well include vehement, caustic, and sometimes unpleasantly sharp attacks." [40] Thus, for purposes of punitive damages allowable on the theory that the privilege was abused, the context in which the jury might have considered any use of the word could have been altered materially. Furthermore, for the necessary showing of appellant's state of mind, appellee relied entirely on evidence that the remark was incited by a prior grudge. Had appellant been permitted to urge that the meeting at which he spoke was a conditionally privileged occasion for efforts to safeguard union funds, the jury could properly have been made to understand that "if the publication is made for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the occasion." [41]

It is among these ingredients of prejudice that, notwithstanding superficial resemblances, we find the factors distinguishing this case from Blake v. Trainer. [42] There, after the plaintiff, an officer of a local union, had protested publication by the defendant, editor in chief of the national union's magazine, of an advertisement by another organization, the defendant addressed to the plaintiff a letter containing language susceptible to interpretation as a charge of disloyalty to the union and circulated copies of the letter to numerous members of several locals. We held that since the trial judge had correctly decided that the occasion was unprivileged, he properly refused to honor a request for an instruction stating the contrary. [43] An additional comment, upon which appellant relies, was that any error consequent upon the trial judge's ruling was obviated by the verdict, which included punitive damages necessarily based on a finding of actual malice. While the *Blake* appeal, as to privilege, involved only the question whether the instruction should have been given, [44] the appeal here puts much more than such an instruction at stake. [45] And we are un-

---

40. Linn v. United Plant Guard Workers of America Local 114, 383 U.S. 53, 62, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

41. Restatement, Torts § 603, comment a (1938). See also Trautwein v. Harbourt, 40 N.J.Super. 247, 123 A.2d 30, 38–39, 59 A.L.R.2d 1274, certification denied 22 N. J. 220, 125 A.2d 233 (1956).

42. *Supra* note 12.

43. "Assuming that the defendant as national officer of the union had an interest in communicating to the local union what he believed to be a dereliction of duty by the plaintiff, we are unable to find that the method of publication used here was a reasonable way of protecting that interest. Had the statement been made at a union meeting for the purpose of provoking an investigation, or had it been made to the officers of the local union for the purpose of informing them of an unwholesome situation, the situation would have been different. But the evidence here justifies the conclusion that defendant's statements attacking plaintiff's integrity were made in retaliation for his protest against the advertisement and not for the purpose of protecting defendant's privileged interest. It also justifies the conclusion that the method of publication was not a reasonable way of protecting the privileged interest. The trial court heard the evidence and was fully informed of the circumstances. Nothing in the record justifies us in reversing its conclusion that no privileged occasion existed here." 79 U. S.App.D.C. at 362, 148 F.2d at 12.

44. *Ibid.*

45. The breadth of this appeal insofar as privilege is concerned is delineated by appellant's statement of two of the questions presented:
"In a slander case, where the pretrial order shows a general denial by defendant, but the facts demonstrating the existence of a qualified privilege are adduced during plaintiff's own case, was it proper for the trial court to exclude the defense of qualified privilege solely on the ground that it was not specifically mentioned in the pretrial order? \* \* \*
"In a slander action, where malice is a material factor, was it proper for the trial court to exclude testimony of the circumstances surrounding the alleged slander

able to say that, had the point been raised, evidentiary and argumentative overtures were affected in *Blake* as they were here.

It may, of course, be that had our appellant been indulged the defense of privilege, the jury's verdict would have been the same. But of this we cannot be certain and, since we are not, appellant must be afforded a new trial.[46]

Reversed and remanded for a new trial.

---

where those circumstances related directly to defendant's good faith, to his honesty of purpose and to provocation arising from plaintiff's own conduct."

46. With this disposition, we need not reach other issues appellant presents for our consideration, which are not likely to again arise on the retrial.